# WILLIAM S. McGOWAN.

## *vs.*

# FINOLA MANUFACTURING COMPANY.

*Corporations: by-laws; officers' salaries.*
*Directors: powers of—.*

Where the by-laws of a corporation vest the authority to fix salaries in the directors exclusively, an agreement between an officer or employee and the president as to an increase of salary is ineffective.                           p. 339

The fact that such officer or employee and the president together held the majority of the capital stock of the corporation, gave them no authority to modify final actions of the board of directors upon a subject-matter committed to their exclusive control.                  pp. 339-340

*Decided April 10th, 1913.*

Appeal from the Court of Common Pleas of Baltimore City (Bond, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Burdette B. Webster* (with whom were *John B. A. Whel-tle* and *Charles F. Harley* on the brief), for the appellant.

*S. S. Field,* for the appellee.

URNER, J., delivered in the opinion of the Court.

The defendant corporation, being sued upon a promissory note for $800.00 representing a loan made to it by the plaintiff, interposed by way of set-off the defense that the plaintiff, while treasurer of the company, wrongfully and without its knowledge or consent, withdrew from its funds at various times amounts aggregating $804.00 in excess of his regular salary. It appears from the plaintiff's testimony that he became interested in the company in October, 1908, when he acquired part of its stock, was made one of its directors and was elected its secretary and treasurer at a salary of $300.00 per annum. The amount of this compensation was fixed by action of the board of directors as indicated by the minutes signed by the plaintiff as secretary. As defined by the by-laws of the company the secretary's duties were to keep the minutes of the proceedings of the directors, give notice of meetings, have the custody of the corporate seal and attest it when affixed to legal instruments, have charge of the transfer of stock, and verify the accounts of the different departments when requested by the board of directors. The treasurer was given general charge of the business relative to receipts and payments, the safekeeping of valuables and securities and the collection of income, and was required to deposit in bank the moneys of the company coming into his hands and to sign with the president all certificates of stock, checks and bonds. The plaintiff continued to serve the company in these official capacities until November, 1910, when

he retired as officer, director and stockholder. During the entire period of his connection with the company he was in the service of the Baltimore and Ohio Railroad Company as its Auditor of Merchandise Receipts, and his time was occupied every business day from eight-thirty o'clock A. M. until five o'clock P. M., except for an hour's intermission at noon, with the duties of that position. He found opportunity, however, to make daily visits to the office of the defendant company.

In January, 1909, the company dispensed with the services of one of the members of its office force who had been receiving twelve dollars per week. The plaintiff testified that in pursuance of an understanding with the president of the company he was given the pay of the retiring clerk. The agreement was suggested by the plaintiff, as he states, and was to the effect that he take this additional salary and "be manager for the company." This was denied by the president, who testified, as did each of the three remaining directors that he had no knowledge of such an arrangement, and that he was not aware until April, 1910, of the receipt by the plaintiff of twelve dollars per week in addition to his salary as secretary and treasurer. The matter having then come to the attention of the board of directors action was taken as indicated by the following entry by the plaintiff as secretary in the minutes of the proceedings: "After a thorough discussion it was decided that the question before the directors of the $12 per week drawn by W. S. McGowan during the period January 1, 1909, to April 1, 1910, and which was not authorized by the directors, and the authorization of which was disputed by the president, they agreed to defer the question of the return of this amount until January 1, 1911." The payments in question were discontinued from the time of the meeting in April, 1910, but the plaintiff had received them for a period of sixty-seven weeks, and his total withdrawals on that account thus amounted to the $804.00 which is placed as a set-off. Prior to the time appointed by the board for further action on the question as

to the return of the payments the plaintiff's connection with the company was terminated.

It is not claimed by the plaintiff that he performed any part of the work for which the salary in dispute had previously been paid. He asserts that this additional allowance was justly due him under the agreement to which he testified for duties which he claims to have assumed and discharged in connection with the supervision and management of the company's affairs. The evidence, however, conclusively shows that the service for which he was entitled to be compensated by the company did not extend beyond the proper and reasonable scope of the duties for which he was paid his regular salary as secretary and treasurer. It is apparent from his testimony that he manifested an active concern for the welfare of the company and was in frequent conference with the president as to ways and means of promoting the success of the enterprise, but the interest he thus exhibited was only such as would ordinarily be supposed to characterize his conduct as an officer who was diligent in the performance of his duties and as a stockholder who had contributed a substantial amount to the capital of the corporation and was solicitous to as his investment. The specific policies and economies to which the plaintiff refers, as illustrating the services in the way of management for which he claims the right to retain the extra salary, are shown by his candid admissions, upon further consideration, to have been instituted or planned before he became interested in the company. It was the duty of the president, under the by-laws, "to have general care and supervision of all the affairs of the company," and for this and other services he was given a salary of $3,000.00 per annum. The directors were unaware that the plaintiff had undertaken to assume part of the duties of managing the corporation. They increased his salary to $500.00 in January, 1910, but there is no dispute as to their belief that his services were merely those incident to his official position. There was no attempt by the plaintiff to conceal the fact that he was receiving the

additional amounts, and there was evidently no intentional wrongdoing on his part, but a careful examination of the proof has convinced us that it is not legally sufficient to support the theory that the withdrawals are sustainable upon the basis of compensation for extra services. They constituted in effect simply an increase of the salary received by the plaintiff for the performance of his official duties. In view, however, of his testimony that the payments were made in consequence of an understanding to that effect with the president of the company, it will be necessary to determine whether that officer had authority, independently of any action by the board of directors, to bind the company by such an agreement.

The by-laws then in force provided that the directors should fix the compensation and define the duties of all officers and employees, that no compensation for services rendered by the president or any director as such should be given unless allowed and authorized by the stockholders. It is conceded that the other directors were not consulted as to the extra allowance of $12.00 per week to the plaintiff, and the record suggests no reason to doubt their statement that they did not learn of those payments until April, 1910, when they were promptly discontinued. The power to fix the plaintiff's salary having been vested exclusively in the board of directors, and having been actually exercised by that body, and the amount to be received by him for the performance of his duties as an officer of the company having been thus designated, it is clear that an attempt to augment the salary by an agreement of the plaintiff with the president alone, without the knowledge or consent of the board, must be held ineffective.

The plaintiff testified that he and the president together owned a majority of the stock of the corporation and for that reason it did not occur to him that it was necessary to consult the directors in reference to the extra weekly salary. But these two officers had no authority, merely because of their ownership of a large proportion of the stock, to modify

the formal action taken by the directors upon a subject-matter committed exclusively to *their* control. *Buchwald* v. *Hurst,* 111 Md. 579.

It is suggested that in this case the president of the company was allowed to have practically the entire charge of its business, and that the meetings of the directors were so few and their interest so passive that the agreement to which the plaintiff has testified as having been effected with the president may be fairly held to bind the company. This theory ignores the fact that the directors actually dealt with the subject of the plaintiff's compensation and did not by their omission or indifference in that regard permit the plaintiff to presume that the president was possessed of the requisite authority to act independently.

The general rule in this State is that an officer of a corporation may recover for services within the scope of his duties provided they are rendered in pursuance of an express contract, and that even in the absence of such an agreement he may recover upon an implied promise for services beyond the scope of his official duties if they are accepted by the corporation. *Waters* v. *American Finance Co.,* 102 Md. 217; *Santa Clara Mining Asso.* v. *Meredith,* 49 Md. 389. It is obvious that this rule never contemplated that an officer whose duties are prescribed by the by-laws and whose salary is fixed by resolution of the directors can have his compensation increased without any material and apparent increase of service by a private arrangement with another officer in disregard of the corporate regulations with which both are familiar.

This case is readily distinguishable from those cited by the appellant, which mainly involve questions as to the responsibility of corporations for services rendered by officers or directors manifestly outside the limits of their ordinary duties, or as to the circumstances under which a president or other officer may be held to have implied authority to bind the corporation by a contract of employment. In the present instance the directors had no reason to suppose that the

plaintiff regarded his services as being in excess of his official duty, and the arrangement as to an increase of the salary distinctly prescribed by the board is claimed to have been made with an officer who is affirmatively shown to have been without the power to bind the company by such an undertaking.    These considerations are so conclusive against the plaintiff's contention, under all the authorities, that we do not find it necessary to review the various decisions which have been cited in the argument.

Upon motion of the defendant the Court below struck out all the testimony offered by the plaintiff to show that the withdrawals in question were made in pursuance of an understanding with the president of the company, the ground of this action being that under the by-laws the president had no authority to allow the plaintiff this additional compensation. The same theory was embodied in an instruction granted at the request of the defendant, which contained the further proposition that there was no evidence in the case legally sufficient to show any acceptance by the defendant of any benefit from services alleged to have been rendered by the plaintiff outside of his duties as secretary and treasurer under such circumstances as to support an implied promise of payment.    There was accordingly a direction that the amount of the withdrawals, with interest in the discretion of the jury, be allowed as a set-off against the promissory note in suit.    These are the only rulings to be reviewed, and we think they made the proper disposition of the case.

*Judgment affirmed, with costs.*