# BALTIMORE AND JAMAICA TRADING COMPANY

*vs.*

# ERNEST L. DINNING.

*Corporate Officer—Recovery for Services—Necessity of Contract.*

An officer or director of a corporation can recover for services rendered the corporation, within the scope of his duties as such officer or director, only if there is an express contract of employment.             pp. 321, 322

An officer or director of a corporation may recover under an implied promise for services rendered by him beyond the scope of his official duties, if they were accepted by the corporation.             p. 322

That when the president of a corporation, at the first meeting of its board of directors, brought up the question of salaries, the conclusion was reached that no salaries should be paid any of the officers until the company actually commenced operations, was not sufficient to show an express contract by which the president, who was also general manager, was to be paid for his services as such.             p. 323

In an action against a corporation to recover for plaintiff's services as its president and general manager, *held* that, in view of the lack of evidence of any express agreement by the corporation to compensate him for such services, and his admissions that he was giving his services without expectation of compensation, the case should have been taken from the jury.             pp. 323-325

*Decided June 22nd, 1922.*

Appeal from the Baltimore City Court (DAWKINS. J.).

Action by Ernest L. Dinning against the Baltimore and Jamaica Trading Company. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*James Morfit Mullen* for the appellant.

*James A. Latane,* with whom was *Harry N. Abercrombie* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

Ernest L. Dinning, the appellee, brought suit in the Baltimore City Court against the defendant, the Baltimore & Jamaica Trading Company, for services rendered by him as president and general manager of that company, and obtained a judgment therein for the sum of $7,500. From that judgment, this appeal was taken.

The appellant company was incorporated under the Maryland law in October, 1919. Its principal business was the importation of bananas purchased in Jamaica and shipped to Baltimore, in vessels chartered by the company. When the fruit reached Baltimore, it was either sold there for local consumption, or shipped and distributed to various points in the eastern part of the United States and in Canada.

The thought of first incorporating the company originated with A. Constantine Goffe of the firm of Goffe Brothers, engaged in the fruit growing and commission business at Port raria, Jamaica; and he suggested to Mr. Dinning the incorporation of it. The suggestion met with the approval of Mr. Dinning, and each of them agreed to subscribe $5,000 to the stock of the company. Both Dinning and Goffe took an active part in the subscription of the capital stock of the corporation, and Dinning interested many of his friends, who became stockholders in the company.

The plaintiff, a ship broker, became one of the incorporators and directors of the company, and at the first meeting of the directors, held October 27th, 1919, he was elected president and general manager of the company.

At a special meeting held on the 29th day of December, 1919, Goffe was made manager of the company in Jamaica at a salary of $10,000. The plaintiff, as president, then brought up the question as to the salaries of the officers of the company, but the matter was deferred to a later time.

There was difficulty in securing boats, and it was not until some time in January that they succeeded in chartering two steamers. These had to be fitted up for the trade, and it was not until in March, 1921, that the shipment of bananas started and the company actually commenced operations.

The question of the salaries of the officers was never again brought up for consideration by the directors, nor does the record disclose that anything was thereafter said or done in relation thereto. Mr. Dinning, however, gave much of his time and attention to the affairs of the company during the banana season of the year 1920, but without success, the company having lost within that period $60,000, nearly one-half of its capital stock.

At a special meeting of the directors, held on the 29th day of January, 1921, Mr. Dinning was deposed as director, president and general manager of the company. As the plaintiff was retiring from that meeting after its adjournment, he said to Vincenti, "You forgot to bring up the question of my salary"; he said, "Forget it"; so I said, "You do not think I am going to serve a company for fifteen months, do all I have done and not get any money for it," and I left him with those words.

On February the 8th, the plaintiff addressed a letter to Ciotti, who had succeeded him as president of the company, saying, "I have served the Baltimore & Jamaica Trading Company in the capacity of president and general manager for about fourteen months without compensation, and in the circumstances would be pleased to receive your check for $5,000, which I consider a very reasonable charge for the services rendered by me." Mr. Mullen, the company's attorney, replied thereto stating that the plaintiff's letter to Mr.

Ciotti had been brought to the attention of the executive committee of the company, and it had decided that his "claim for salary for services as president could not be entertained"; and that he was instructed by the committee to advise him to that effect. It was then that the plaintiff brought his suit.

With the declaration filed on March the 18th, consisting of six of the common counts, was filed the following account:

"Baltimore, March 1st, 1921.

"The Baltimore Jamaica Trading Company to Ernest L. Dinning:

"To services *as president and general manager* of The Baltimore Jamaica Trading Company for the period beginning the first of November, 1919, and continuing until January 29th, 1921, fifteen months, at the rate of five hundred ($500.00) dollars per month, or $7,500."

The question thus presented by this appeal is whether the plaintiff was entiled to compensation for his services rendered as *president and general manager* of the defendant company.

The law by which this question should be determined is, we think, very well stated and established by the decisions of this State in the three following cases: *Santa Clara Mining Association* v. *Meredith*, 49 Md. 389; *Waters* v. *American Finance Company*, 102 Md. 212; and *McGowan* v. *Finola Mfg. Company*, 120 Md. 335.

In *Santa Clara Mining Association* v. *Meredith, supra,* our predecessors said, "To entitle a president or a director of a corporation to recover for services rendered his corporation, he must prove an *express* contract of employment, if the services for which he claims compensation are within the line and scope of his duties *as* president or director."

In *Waters* v. *American Finance Company, supra,* CHIEF JUDGE BOYD, delivering the opinion of this Court, said, "It is true that in this State an officer or director of a corporation can recover for services rendered his corporation, even if the services for which he claims compensation are within

the line and scope of his duties, as such officer or director—*provided* he proves an *express* contract."

And in *McGowan* v. *Finola Mfg. Company, supra,* this Court, speaking through JUDGE URNER, said, "The general rule in this State is that an officer of a corporation may recover for services within the scope of his duties, provided they are rendered in pursuance of an express contract."

In the first of the three cases cited, the plaintiff was president, in the second, vice-president, and in the third, secretary and treasurer.

In the case before us, the plaintiff is general manager, as well as president of the company, an office created by its by-laws, and the incumbent thereof specially mentioned and referred to therein as an officer of the company.

In each of the cases above mentioned, the further principle is laid down that an officer or director of a corporation may recover under an implied promise for services rendered by him beyond the scope of his official duties, if accepted by the corporation.

This last principle, however, is not, we think, involved in this case.

The plaintiff sued under what is commonly known as the Baltimore City Rule Day Act (chapter 184 of the Acts of 1886, as amended by chapter 173 of the Acts of 1894), and with his declaration, consisting of the common money counts, he filed an account which, under said act, is part of the pleadings and is to be considered and taken in substitution for a bill of particulars. In the account the charge is for services (rendered) *as* president and general manager of the company. The charge is not made for services rendered in another capacity or outside of his official duties as president and general manager of the company, but for compensation for services rendered by him in the performance of his duties as president and general manager of the company.

It thus becomes necessary, in deciding the question presented by this appeal, to determine whether there was an

express contract or agreement between the plaintiff and the defendant company, by which the plaintiff should be paid for his services rendered as its president and general manager.

The only time that the officers' salaries were ever mentioned or referred to was on the occasion to which we have already referred, when, as we have said, the question was deferred until a later time; and all that was said on that occasion is disclosed by the minutes of that meeting, where it is said, "The president then brought up for discussion the question of salaries of the officers of the company, and after discussion, it was the sense of the meeting that until the company actually commenced its operations, no salaries should be paid *any* of the officers of the company."

The question of the salaries of the officers of the company was brought up by the president himself and, after discussion, the conclusion was reached that until the company actually commenced operations, no salary should be paid *any* of the officers of the company.  By this conclusion, the most that was determined was that no salaries should be paid any of the officers of the company earlier than the time mentioned, if then, and those, if any, who were then to be paid, was not determined.

The directors, without violating any of the provisions contained in the minutes referred to, might have determined later not to pay any of its officers until a still later time, or they might have decided to pay some and not others of them, as is often done; and as the president and general manager is not shown to have been specially mentioned or alluded to in this discussion, it cannot be said that there was in the minutes an express contract or agreement between the plaintiff and the company that he should be paid anything for the services rendered by him as president or general manager. The minutes are not only silent as to the amount he should be paid therefor, but it fails to show that he was to receive anything.

That there was no express contract by which the plaintiff was to be paid for the services rendered by him as presi-

dent and general manager is further shown by a letter written by the plaintiff to Goffe so late as August the 3rd, 1920, long after the steamers had been chartered and were making their regular trips, in which letter the plaintiff expostulated with Goffe about his extravagant expenditures charged against the company at Jamaica, saying, "The writer, Messrs. Vincenti and Ciotti, are giving our time *absolutely free* to the company, hoping that we can work up a business which, in the beginning, was gone into purely as an experiment."

And, as further showing that the plaintiff did not understand that there was such an agreement between him and the company, he, when asked, "Is it not true that long after the meeting of December the 29th, 1919, you told several persons you were serving absolutely free, that the operations of the company were in the nature of an experiment and that until the company was put on a profitable basis you were going to give your services free, is that true," he replied, "I might have made a statement along those lines to some of my friends who were stockholders of the company. I took a great deal of pride in the operations of the company. I gave my time and my very best attention to the interests of the company in the hope we could make it a profitable concern. It was the understanding, when I first went into the company, that I should be its president and have charge of the management at this end. *Had I been allowed to continue in that office,* I probably would have been disposed not to ask for any compensation the first year."

In the trial of the case, four exceptions were taken, three relating to the evidence and one to the court's action on the prayers.

The defendant offered nine prayers. The first two are designated as its A and B Prayers, and the others are numbered from 1 to 7 inclusive.

The court refused all of its prayers except the fifth and sixth. The plaintiff offered no prayers but adopted the two granted prayers of the defendant.

The defendant's A prayer, asking that the case be taken from the jury for the want of legally sufficient evidence under the pleadings entitling the plaintiff to recover, should, we think, have been granted, and the case taken from the consideration of the jury, because of what we have already said in the discussion of the case, and as we take this view of the case, we need not discuss and pass upon the exceptions to the evidence or the court's action upon the other prayers of the defendant; but as it is disclosed from the evidence that the plaintiff gave much time and attention to the affairs of the company, it may be that some of that which was done by him may not have been within the scope of his duties either as president or general manager of the company.

Therefore, we will not reverse the judgment without a new trial, but will give the plaintiff, if he wishes it, an opportunity to make the necessary amendments and retry the case.

*Judgment reversed, with costs, and new trial*
*awarded.*