SAMUEL HARRISON
vs.
ALEXANDER B. HARRISON ET AL. } December Term, 1848.

[SALES BY TRUSTEES—OBJECTIONS TO—STATUTE OF FRAUDS.]

It is the well understood law of this state, that in sales made under authority of trustees in chancery, the court is the vendor, and the trustee its mere agent, acting under a specially delegated authority.

Though the trustee may depart from the special directions of the decree, yet a subsequent ratification by the court would render a sale as binding and valid, as if he had pursued, in all respects, those directions.

The court, in confirming the acts of its agents who have not followed the directions given them, must take care that no injustice is done the parties interested, and that they have an opportunity of being heard before their rights are decided upon.

It is not, always, a valid objection to the confirmation of a sale, proved to have been well attended and fair in other respects, that it was made on a different day, and at a different place from those mentioned in the advertisement.

The report of the sale by the trustee, is not absolutely necessary to perfect the title of the purchaser.

It may well be doubted, whether sales made by trustees under the authority of our courts of equity, are within the statute of frauds.

[Alexander B. Harrison, trustee under a decree in chancery, in a creditor's suit, to sell the real estate of John Merchant, deceased, made sale thereof at auction, in St. Michaels, Talbot county, on the 2d of May, 1829, in different parcels, and received the purchase money therefor, but died without having made a report to the Chancellor. The sale, as appeared by the evidence, was well attended, and the prices bid, fair and reasonable. On the 19th of May, 1848, John Perrine, of the city of Baltimore, was, on the petition of Joseph Merchant and others, parties defendants in the cause, appointed trustee to collect the purchase money, and advertised the property again. On the petition of Thomas Keithby and others, who claimed it as purchasers, or through purchasers at the sale made in 1829, the proceedings of the trustee were suspended by order of the Chancellor. Testimony having been taken to prove the circumstances attending the sale, the case was argued on the several petitions and orders. The Chancellor said, that the follow-

ing facts were, in his opinion, satisfactorily proved : That a sale was made by the trustee, on the day above mentioned ; that the prices given, were at the time, fair and reasonable ; that it was public, in the presence of a considerable number of bidders ; that there was competition between them ; that the purchase money had been paid to the trustee, or settled for ; and that the purchasers of those claiming under them, had been in possession of the property for a long time, and had made improvements thereon to some extent. There was no proof of such an agreement between the trustee and the purchasers as, if it had been an ordinary sale, would have taken it out of the statute of frauds.]

THE CHANCELLOR :

It is the well understood law of this state, that in sales made under the authority of decrees in chancery, the court is the vendor, the trustee being the mere agent or attorney of the court, under a special delegated authority. *Andrews* vs. *Scotton*, 2 *Bland*, 629. And the true character of such a sale is, that it is a transaction between the court and the purchaser, and a private sale as well as a public sale may be made, if the court deem it advantageous. And after setting aside the sale reported by the trustee, as formally irregular, the court may revive the terms of the contract with the same purchaser, if no other objections existed, and those terms are deemed advantageous to the parties, who are in court prepared to protect their interests. Such is the language of the Court of Appeals in *Glenn* vs. *Clapp*, 11 *G. & J.*, 8, 9.

Regarding the trustee as the agent of the court in making the sale, it would seem to follow necessarily, that though he may depart from the special directions of his principal, and thus exonerate the latter from the obligation to confirm his act, yet, if he thinks proper to do so, the act of the agent will be as binding as if he had pursued, in all respects, those directions. A subsequent ratification of the act having the same effect, as a previous authority.

The court, it is true, must take care, in confirming the acts of its agents who have not followed the directions given them,

that no injustice is done the parties interested; and that they have an opportunity of being heard, before their rights are decided upon. But if after this is done, the court is satisfied that justice requires the ratification of a sale made by a trustee of this court, there is no principle which forbids it, though the trustee may not have observed those formalities, which were prescribed for him.

It was said by Chancellor Hanson, in a case which appears to have been very carefully considered, that with respect to sales made under the authority of the .court, he thought himself bound to act as if the property were his own, or held by him in trust; and that reasons which would induce him, as proprietor, or trustee, to set aside a sale made by his agent, would influence him as Chancellor. *Lawson* vs. *the State*, 2 *Bland*, 641, *note*. Whether this is the true rule or not, need not be determined here, for although the court may not have so large a discretion, in repudiating the contract of its agent, as is suggested by the Chancellor in that case, it may be safely assumed, I think, that though its agent may not have conformed in all respects, to the regulations prescribed for him by the court, it may, nevertheless, if justice to all parties can be done, ratify his act.

It has been already remarked, that the sales which are now impeached, were public, and fair, and that the terms have been complied with; and hence it follows, that if they are vacated, it must be upon grounds exclusively affecting what are called the model arrangements, by which the trustee was to be governed.

The first objection of this description is, that the sale was not made at the time and place mentioned in the printed advertisement, found among the proceedings.

The time, as advertised, was the 21st of April, 1829, and the place at the court-house door, in Easton; whereas the sales actually made, were made on the 2d of May following, and the place, St. Michaels. It is in proof, however, that a large company were present, and it may reasonably, I think, be inferred, that on the day fixed by the advertisement, the sale for some

sufficient reason, was postponed, and that notice was then publicly given, that it would be had at the time and place at which it was actually made ; and when it is recollected, that the property lay in and about the town of St. Michaels, the policy of such change of place, is readily seen.

The trustee who made the sale, is now dead, and nearly twenty years have elapsed, and under such circumstances, to require of the purchasers, who have complied, and paid their money, to prove by positive evidence, a compliance by the trustee with this regulation, would, it appears to me, be a hard measure of justice.    The court may presume that notice was given, and indeed when the proof shows, that a large number of persons were present, such a presumption can scarcely be avoided.

Next it is objected, that the trustee did not make a report of his sales, as directed by the decree.

But, I apprehend, the title of the purchaser cannot depend absolutely upon the performance by the trustee, of this part of his duty.   If it did, it is obvious, that in many cases, from death, and other causes, the title of purchasers might be defeated.   This court may, I think, if satisfactorily convinced that a sale has been made by its agent, though that agent has not informed it, in the mode directed—that is, by a report—approve and ratify the sale.   To show that the title of purchasers are not made to depend upon the full compliance by trustees with their duty as prescribed by the decree, the case of Ramsay's estate has been referred to, in which a sale was ratified, though the trustee gave no bond.

In addition to these objections, the statute of frauds has been urged, not by way of plea, or exception to the sale, made in writing, but *ore tenus*, and by way of argument.   It may, I think, upon authority, and upon principle, be very well doubted, whether sales made by trustees under the authority of our equity courts, are within the statute of frauds.   In 2 *Daniel's Prac.*, 752, it is said, that sales before a master of the court, under a decree or order, are not within the statute of frauds.   And, in the case of the Attorney General vs. Day, Lord Hardwicke said,

that purchasers before the master are certainly out of the stat-ute ; and, that he would not hesitate carrying the purchase into execution, against a bidder before the master, without subscrip-tion, after confirmation of the master's report ; the judgment of the court taking it out of the statute. Now, if the judgment of the court, confirming the master's report, will take the case out of the statute, it is not easy to perceive, why the judgment of the court, ratifying the sale, though not reported by the mas-ter, will not have the same effect. If the master's report is not subscribed by the bidder, it cannot be regarded as a contract signed by him, or some person authorized by him. If the re-port of the master, though not subscribed by the purchaser, has been considered binding upon him—that is, as having been made by his agent duly authorized, then, the language of Lord Hardwicke—that the judgment of the court took the case out of the statute—would have been inappropriate ; because, the requisition of the statute being already complied with, by the report of the master, there could be no necessity for any judg-ment, to relieve the case from the operation of the statute.

Sales of land, by sheriffs, have been decided in this state, to be within the statute of frauds. *Barney* vs. *Patterson*, 6 *H. & J.*, 172. But, the essential points of difference between sales so made, and the character and authority of the sheriff and of trustees appointed by this court, are fully and clearly stated by my predecessor, in *Andrews* vs. *Scotton*, 2 *Bland*, 636. These differences are so many and material, that it is impossi-ble, with safety, to apply any one principle to them both. But, the vital difference, perhaps, with reference to the ques-tion now under consideration, is, that the sheriff's sale, if made conformably to law, is final and valid, and passes the title ; whereas, chancery sales, the court being the vendor, are not binding and conclusive until approved and ratified by the court.

It is not, however, necessary in this case to decide the broad question, whether the sales are or are not within the statute of frauds, for one or two reasons. In the first place, the statute is not pleaded at all, by any one, but only relied upon *ore tenus*,

and in argument. In the next, the objection is made, not by a party to the contract, it being between the court on the one side, and the vendees on the other, but, by the heirs of the party whose lands the court had decreed should be sold—the right of whom to interfere in this way may well be doubted. And, in the third place, this contract of sale having been performed by the payment of the purchase money, and delivery of possession is taken entirely without the statute, and must be carried into full execution.

If other reasons were required for confirming these sales, they would be found in the great length of time which has elapsed since they were made, and the other attending circumstances of the case.

They were made in 1829, and it was not until the year 1847, after the death of the trustee, that any attempt was made to disturb the title of the purchasers, and then, only by affirming that the purchase money had not been paid.

Some of the parties now urging objections, were parties to the cause in which the decree passed, and must, therefore, be presumed to have had some knowledge of it. And, in view of the public manner in which the property was sold, and the large company present upon the occasion, it is difficult to believe they did not know of the sale. It was quite as much their duty as the duty of the purchasers, to require the trustee to make his report, and it can scarcely be doubted they would have done so, if they had not known that the creditors of their ancestor would take the whole purchase money.

The purchasers received the trustees' deed, and after this lapse of time, it would be a severe measure of justice to require them to show that every formal prerequisite had been complied with, especially, in favor of parties who have for so long a time slept upon their rights.

[The order in this case was affirmed on appeal.]