HENRY MAY GITTINGS et al. *v.* GEORGE R. MORRIS et al.

[No. 44, October Term, 1928.]

*Decided February 15th, 1929.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*William Cabell Bruce* and *Joseph S. Goldsmith,* for the appellants.

*Walter C. Mylander,* with whom was *Nathan Patz* on the brief, for the appellees.

Pattison, J., delivered the opinion of the Court.

A tract of land in Baltimore City, known as the "Ashburton" farm, containing 191.508 acres, was devised by John S. Gittings to his grandson John S. Gittings for the term

of his natural life, and after his death to his children who survived him.

On or about the 17th day of November, 1904, John S. Gittings, the grandson, filed in the Circuit Court of Baltimore City his bill of complaint against his children, Henry May Gittings, Gladys H. Gittings, Dorothy R. Gittings, John Sterrett Gittings, Frederick May Gittings, appellants in this case, asking for the sale of said land under section 243 of article 16 of the Public General Laws of Maryland. On the 24th day of January, 1905, a decree was passed as prayed, by which decree the proceeds arising from the sale of said land were to be reinvested in accordance with the provisions of the above mentioned statute.

Thereafter a sale was made of a part of said land to the Ashburton Land & Improvement Company. The purchase money was never paid therefor, nor was the property ever conveyed to the purchaser, and on the 10th day of March, 1920, John S. Gittings, as trustee, with the consent of the Ashburton Land & Improvement Company, of which he was president, sold at private sale said lands, consisting of 167.271 acres, more or less, to George R. Morris, at and for the sum of $459,995.25, subject to the approval of the court. This sale the trustee reported on the 23rd day of March, 1920, and was finally ratified by the court on the 24th day of April, 1920.

The contract and report of sale both show that 24.237 acres of the land for the sale of which the decree was obtained were not sold, but reserved by the trustee. Its location is shown on the plat filed with the report of sale, and is designated thereon as "Reservation."

It is also shown by said contract, as well as by the report of sale, that the said lands were sold upon certain restrictions and conditions, among which are found the following: "It is * * * understood and agreed that all houses built on that part of land hereby sold and designated 'C' on said plat, shall, if built on roads, or streets bounding the part marked 'Reservation' on said plat, face the property marked 'Reservation' and all such houses shall be single dwellings

568

built on lots of not less than fifty feet front, or groups of not more than six houses to a group, the minimum cost of each house to be five thousand dollars ($5,000) and the houses facing said 'Reservation' if in groups to be of the same general type of exterior archritecture as those built by party of second part and known as University Homes, a photograph of some of which is hereto attached as part hereof for the purpose of defining the general type of architecture above mentioned."

And in the sale of the property mentioned, the following conditions or restrictions were imposed upon the property reserved: "All houses facing the roads bounding said restricted parts shall be of the same general type of architecture as the University Homes hereinbefore mentioned and shall be built either singly or in groups of not more than six (6) houses to a group; in the case of single houses, they shall be built on lots having a frontage of not less than fifty (50) feet, and other houses shall likewise be built if singly on lots of not less than fifty (50) feet front or in groups of not more than six (6) houses to a group, and no house built on said 'Reservation' shall cost less than five thousand dollars ($5,000) each. Said property may, however, be sold to the City of Baltimore for park or recreation or other public purposes without restrictions."

On the 8th day of July, 1920, John S. Gittings, trustee, filed a petition in said case in which he asked that the lot of land known as "Reservation," be relocated, for the reasons stated therein, with the approval of the purchaser Morris, by removing it seventy feet eastward, without diminishing or increasing the amount of the land so reserved. In addition thereto, the petitioner asked that he be allowed to correct a mistake upon the plat filed, made in designating the lands marked "A"; and with his petition he filed a corrected plat. Attached to the petition was the consent of Morris that the report of sale should be amended as asked for by the petitioner; and upon the petition and consent thereto, an order was passed by the court amending the report of sale, as prayed, and allowing the corrected plat to be

substituted for the one previously filed with the report of sale.

Thereafter, on the 26th day of October, in the year 1920, John S. Gittings, trustee, executed and delivered to George R. Morris a deed whereby he conveyed to Morris the tract of land sold to him as aforesaid. In this deed is the following provision, which is not found in said contract, the report of sale, or the amended report of sale: "And whereas said sale was made subject to the following covenants, conditions, agreements, restrictions, all of which are intended to form a part of the consideration of this deed, and which are to run with and bind the land herein described, and the parties hereto, their heirs, personal representatives and assigns, and those entitled in remainder, their heirs, personal representatives and assigns, and all owners and occupants thereof."

On the same day, and after the delivery of the deed from John S. Gittings, trustee, to George R. Morris, the latter executed and delivered to the Northwest Real Estate Company, a body corporate, a deed, dated October 26th, 1920, conveying to said corporation the tract of land which had been conveyed to him by John S. Gittings, trustee.

Thereafter, on the 3rd day of August, 1922, John S. Gittings, trustee, filed a petition in which, after referring to the restrictions imposed upon the property sold under said contract, and to the stipulations therein relating to the unsold property known as "Reservation," he alleged:

First, that the petitioner, with George R. Morris and the Northwest Real Estate Company, had agreed, subject to the sanction and approval of the court, that in lieu of the two paragraphs of the contract of sale, containing the restrictions, hereinbefore fully set out, the following paragraphs should be substituted, and the same considered as having been originally inserted in said contract:

"It is further understood and agreed that all houses built on that part of land hereby sold and designated 'C' on said plat, shall, if built on roads, or streets bounding the part marked 'Reservation' on said plat, face the property marked

'Reservation' and all such houses shall be single dwellings built on lots of not less than fifty feet front.

"It is further agreed that the property marked 'Reservation' on said plat shall be restricted in the same manner as the property facing said 'Reservation', said 'Reservation' or any part thereof, however, if acquired by the City of Baltimore for park, or recreation or other public purposes may be used without restrictions."

Second: That the petitioner, with George R. Morris and the Northwest Realty Company, had also agreed, subject to the ratification and approval of the court, upon the following, to have the same effect as though originally inserted in said contract of sale:

"No building, fence, wall or other structure shall be commenced, erected or maintained, nor shall any addition to or change or alteration therein be made; until the plans and specifications, showing the nature, kind, shape, height, materials, location and approximate cost of such structure and the grading plan of the plot to be built upon shall have been submitted to and approved in writing by a committee of three, one representing John S. Gittings, Trustee, and the other representing The Northwest Real Estate Company, and a third to be Edward L. Palmer, or such other architect as said two parties may from time to time agree upon, the fees and expenses of the architect so employed to be borne by said The Northwest Real Estate Company as to its property and by John S. Gittings, Trustee, as to the 'Reservation.' The said committee shall have the right to refuse to approve any such plans or specifications or grading plan, which are not suitable or desirable, in its opinion, for aesthetic or other reasons and in so passing upon such plans, specifications and grading plan it shall have the right to take into consideration the use and suitability of the proposed building or other structure and of the materials of which it is to be built, to the site upon which it is proposed to erect the same, the harmony thereof with the surroundings and the effect of the building or other structure, as planned, on the outlook from adjacent or neighboring property."

On the same day the court ordered and decreed "that the action of the said trustee in making the several agreements with George R. Morris and the Northwest Real Estate Company particularly set forth in said petition, making changes in, additions to and modification to the contract of sale * * * between the said trustee and the said George R. Morris, be and the same are hereby ratified and confirmed, to have the same effect as though the same had been originally inserted in said contract of sale."

Thereafter, on September 28th, 1922, John S. Gittings, trustee, filed a petition in which he alleged that he, with the said George R. Morris and the Northwest Real Estate Company, had agreed, subject to the ratification and approval of the court, that the petition filed on August 3rd, 1922, be amended by adding to the clause last above quoted, to have the effect as though originally inserted in the said contract, the following: "This clause shall apply only to that part of the land designated 'C' on said plat, which faces the property marked 'Reservation' thereon, and that part of the property marked 'Reservation' thereon which faces that part designated 'C' thereon." Upon said petition it was on the 28th day of September, 1928, ordered that it be amended as prayed.

The appellants, Frederick May Gittings, Dorothy R. Gittings, and Henry May Gittings, conveyed all their right, title and interest in the aforesaid lands to Hugh L. Pope, one of the appellants, in trust and confidence for the uses and purposes therein set forth by their respective deeds, dated January 22nd, May 23rd, and June 8th in the year 1923.

After the purchase and conveyance of the lands named, the Northwest Real Estate Company sold and conveyed lots to numerous purchasers, among whom are the appellees Charles M. Harkins, Annie B. Harkins, Bernard H. Hanlon, Harriett R. Hanlon, Eugene W. H. Lamotte and Helen V. Lamotte.

Thereafter on the 23rd day of January, 1926, John S. Gittings trustee, departed this life, without having sold the land reserved known as "Reservation."

572

On October 29th, 1927, the appellants, Henry May Gittings, et al., filed their bill against George R. Morris and the other appellees, already named, in which they alleged the facts we have stated, together with the further facts that they were in possession of the property reserved, which is the subject of this suit, and the bill then charged that John S. Gittings, trustee, "was not vested with authority in the performance of his duties as trustee to subject that part of the property involved in the said proceedings, which was not sold by him and which has been designated as the "Reservation" as hereinbefore stated, to any restrictions, whatsoever, and especially to such restrictions as are set forth in the report of sale which was filed in the above mentioned case on the 23rd day of March in the year 1920, and the petitions for amendment thereof, which were filed on the 3rd day of August in the year 1922, and the 28th day of September, in the year 1922, and that the Circuit Court of Baltimore City was without jurisdiction in the said case, to authorize or approve any contract or proceeding in any form, for imposition of such restrictions; that if such restrictions could at any time, or under any conditions, have been valid, the stipulations have now become impossible of performance, in consequence of the death of said John S. Gittings; that the said restrictions have been constantly ignored by the defendants, and with the approval of said George R. Morris and the Northwest Real Estate Company, by grantees from the last mentioned company, who have erected and maintained buildings on land to which the restrictions were in terms applicable, without having previously complied with the requirement that 'the plans and specifications, showing the nature, kind, shape, height, materials, location and approximate cost of such structure, and the grading plan of the plot to be built upon shall have been submitted to and approved in writing by a committee of three, one representing John S. Gittings, trustee, and the other representing the Northwest Real Estate Company, and a third to be Edward L. Palmer, or such other architect as said two parties may from time to time agree upon'; that the said restrictions, if they were

valid, would be burdensome and unreasonable, and would very much depreciate the property which is hereinbefore referred to as the 'Reservation' and in which your orators are interested in the manner hereinbefore set forth, and therefore, even though they are invalid, as contended by your orators, they constitute a serious cloud on the title of your orators."

The bill then prayed that the court, by its decree, declare that the parcel of land described and designated as the "Reservation" in the case of *John S. Gittings v. Henry May Gittings, et al.* is free from any and all restrictions to which it may appear to have been the purpose of any person or persons or of the court to subject it. And second, for general relief.

To this, the second amended bill, a demurrer was filed, which was sustained, and the bill dismissed. It was from the order sustaining the demurrer and dismissing the bill that the appeal in this case was taken.

The grounds of the demurrer are:

First: That the plaintiffs failed to file with the bill, as exhibits, copies of written documents to which references were made in the bill.

Second: That those persons named in the bill as purchasers of lots from the Northwest Real Estate Company, and who were made defendants thereto, did not adequately represent all of those who in like manner had purchased lots from said company. That more of such persons should have been made defendants.

Third: That the amended bill was insufficient in equity and law to entitle the plaintiffs to the relief sought.

Fourth: That it is shown by such amended bill and the exhibits filed therewith, that the plaintiffs in this suit, Henry May Gittings and his brothers and sisters, were defendants in said suit instituted against them by their father in 1904, for the sale of the lands herein mentioned. That with their knowledge and participation therein, they must have known of the restrictions and conditions under which the land was sold and of which they now complain. That by such restric-

574

tions and conditions they were benefited, in the enhanced value of their reserved or unsold land, and with that knowledge, they, the recipients of such benefit, cannot now in equity and good conscience assail the power and authority of the trustee to make the restrictions imposed upon the unsold land in the sale of the land made by him.

In disposing of these objections, we will consider them in the order stated.

The exhibits which the appellees claim under their first objection to the bill should have been filed with it are not specifically stated by them. It would seem from an examination of the bill that a copy of every written document forming a part of the record in the former case and referred to in the bill under consideration was filed as an exhibit with it, except the bill of complaint and the will of the grandfather of the life tenant, John S. Gittings, which was more or less incidentally mentioned as the source from which the property therein sought to be sold was derived. Though no copy of the bill was filed as an exhibit at the time of the court's action on the demurrer, as it should have been (*Anderson v. Cecil*, 86 Md. 490), it has since been filed in the lower court and is now in the printed record in this court, and as the case will on other grounds be remanded for further proceedings we will not further discuss this omission.

The demurrer should not in our opinion be sustained on the second objection thereto, where it is claimed that there was a want of representation of defendants among those who became purchasers of lots from the Northwest Real Estate Company. It was said in the argument, and not contradicted, that a great number of persons had bought lots of that company, but none of these have asked to be made parties defendant to the bill. The Northwest Real Estate Company, it is said, still owns much of the property and is vigorously defending its alleged rights and the rights of those to whom it has sold lots, and we are unable to say, in passing upon this demurrer, that it was necessary, in making a proper defense to the allegation of the bill, for more of such purchasers to have been made parties defendant.

It is claimed under the third objection to the bill of complaint that, in the sale of the land to Morris, the restrictions upon the unsold land were rightfully imposed, and, in consequence thereof, the plaintiffs are not entitled to the relief sought.

The jurisdiction of a court of equity to decree a sale of land under Code, art. 16, sec. 243, the statute under which the lands mentioned herein were decreed to be sold, "rests upon the concurrence of two conditions precedent, and they are that all parties in interest and in being, who would be entitled if the contingency had happened at the date of the decree, must be parties to the proceedings and the sale must be made to appear to be advantageous to the parties concerned." *Ball v. Safe Deposit Co.*, 92 Md. 507.

The concurrence of these conditions was shown to exist in the case of *Gittings v. Gittings*, in which the decree for the sale of the aforesaid lands was passed, and there was no question raised as to the jurisdiction of the court in the passage of that decree, and its validity is conceded by the appellants. In the sale of land under a decree, the court is the vendor and the trustee its agent under a special delegated authority to make the sale, and though the trustee may depart from the special direction given him by the court, and thus exonerate it from its obligations to confirm his act, yet, if the court thinks it proper to do so, his act as agent of the court is as binding as if he had pursued in all respects the direction of the court. The subsequent ratification of his act having the same effect as a previous authority. *Harrison v. Harrison*, 1 Md. Ch. 331; *Andrews v. Scotten*, 2 Bland, 629.

In the light of these well established principles, we will inquire into the validity of the restrictions upon the unsold land of the plaintiffs.

There are a number of these restrictions, but we will only consider those which are claimed by the plaintiffs, in their bill, to have been wrongfully imposed upon the lands reserved by the trustee, and which have the effect, as claimed by them, of casting a cloud upon their title to such land, of which they are now the sole owners.

The first of these restrictions is:

"It is further agreed that the property marked 'Reservation' on said plat shall not be sold without its being restricted as follows: All houses facing the roads bounding said restricted part, shall be of the same general type of architecture, as the University Homes hereinbefore mentioned, and shall be built either singly or in groups of not more than six houses to a group; in the case of single houses, they shall be built on lots having a frontage of not less than fifty (50) feet, and other houses shall likewise be built if singly on lots of not less than fifty feet front, or in groups of not more than six houses to a group, and no house built on said 'Reservation' shall cost less than five thousand dollars each. Said property may, however, be sold to the City of Baltimore, for park or recreation, or other public purposes, without restrictions."

This restriction is found both in the contract and in the report of sale. When the latter was filed, a conditional order was passed thereon, giving all parties interested an opportunity to show cause why it should not be ratified, and no objections being filed thereto, and no cause to the contrary having been shown, it was finally ratified and confirmed.

Thereafter the reserved land, before it was conveyed to the purchaser, was relocated by an order of the court, passed upon a petition filed by the trustee, and assented to by the purchaser, and the report of sale was so amended as to conform to the change made in the relocation of the lands. To this action of the court, we do not understand the plaintiffs urge any objection, as it in no way injuriously affected them.

Thereafter the land was conveyed by the trustee to the purchaser. In that deed the property reserved is described as relocated, and in it are found the restrictions above set out, that were imposed upon the unsold lands of the plaintiffs, and also like restrictions upon the land sold to Morris. In addition thereto is found the provision that the covenants and restrictions were to run with and bind the land therein described, and the parties thereto, their heirs, personal representatives, and assigns, and those entitled in remainder, their heirs, personal representatives and assigns, etc. This last

provision gives the meaning and effect of the agreement of sale as intended and understood by the parties thereto.

The deed, executed on the 26th day of October, 1920, was duly recorded among the land records of Baltimore City, and all persons, including appellants, were given constructive notice, at least, of its existence, and of what it contained.

Two of the plaintiffs, Henry May Gittings and Gladys Gittings, are shown to have been adults at the time of the filing of the bill by their father in 1904, and the other three, as shown by the deeds executed by them to Pope, were adults in 1923. In fact, it was stated by the counsel for the defendant in the argument before us, and in their written brief, that the plaintiffs were all adults at the time of the sale and conveyance of the land, which statement was not contradicted.

These restrictions, from which benefits accrued to the appellants, made with the approval of the court, and to which no timely objections have been made, are, we think, binding upon the appellants as the owners of reserved land.

The land in this case was situated in the City of Baltimore, and its location naturally suggested that a better price could be obtained therefor if it were sold to be divided into lots for the erection of dwellings thereon. It was the duty of the trustees to offer the property in such manner as to bring its fair market value and to exercise the same judgment and prudence that a careful owner would exercise in the sale of his own property. *Hopper v. Hopper,* 79 Md. 402.

The trustee, in the exercise of his judgment, thought that by a sale of the land, or a part of it, to be divided and sold in lots, the best price could be obtained therefor, and it was also thought by him, if it were to be so sold, restrictions should be placed thereon relating to the character of the buildings to be erected, the manner of their construction, and other restrictions conducive to the enjoyment and comfort of those who should occupy the dwellings to be erected thereon.

To carry out this plan or scheme successfully it was neces-

sary to impose restrictions upon the unsold part lying near or adjacent to the sold land. The restrictions imposed upon the land sold would mean little or nothing to its owners, if the adjacent unsold land was not to be subjected to like restrictions.

On the 3rd day of August, 1922, two years after the execution of the deed, the court passed an order approving and ratifying an agreement made by the trustee with the Northwest Real Estate Company, by which it was agreed that, in lieu of the existing restrictions, the following restrictions should be imposed upon the reserved land: "That the property marked 'Reservation' * * * shall be restricted in the same manner as the property facing said 'Reservation.'" The restrictions upon the land facing the "Reservation" was, by such agreement, made to read: "All houses built on that part of the land hereby sold and designated 'C' * * * shall, if built on roads, or streets bounding the part marked 'Reservation' * * * face the property marked 'Reservation' and all such houses shall be single dwellings built on lots of not less than fifty feet front."

The effect of this change in the restrictions was to do away with the requirements that the houses built were to be of the same type of architecture as the "University Homes," and the houses thereafter were to be single houses and built on lots of not less than fifty feet front. The agreement of the parties, which was ratified by said order of court, contained the further restriction that no structure of any sort should be erected upon the property until the plans and specifications therefor were first submitted to and approved by a committee of three, one representing the trustee, one the Northwest Real Estate Company, "and a third to be Edward L. Palmer, or such other architect as said two parties may from time to time agree upon." This committee was given unusually broad powers in determining what should and what should not be built upon the property.

This order of the court, ratifying the agreement, changing the restriction and adding thereto the provision as to the appointment of said committee, was passed two years after

the property was sold, the sale ratified, and the deed therefor to the purchaser executed and recorded, and after all dealings between the trustee and Morris in reference to the sale of the property had long since ended. The authority of the trustee under the decree was limited to the sale of the property, and when the sale to Morris was made, the trustee's authority as such in respect to that property was at an end, and any and all agreements thereafter made, either changing or adding to the restrictions then existing upon the unsold land, were not made upon the authority conferred upon him by the decree, and were not, we think, in any sense binding upon the appellees.

It may be that the appellants have been for years silent recipients of the benefits accruing to them from such restrictions, but in our opinion this fact does not, as claimed by the appellees in their fourth objection, estop the appellants from assailing the validity of those restrictions. The appellants are only bound, we think, by those restrictions that are found in the deed to the purchaser and embraced in the contract of sale.

> *Case remanded for further proceedings in accordance with this opinion, without affirming or reversing the decree, each party to pay one-half of the costs in this court.*

---

PARKE, J., filed the following concurring opinion.

While concurring in the result, it is the writer's judgment that the opinion of the court should have explicitly disapproved the practice of a trustee (1) selling land under a dormant decree obtained by virtue of section 243 of article 16 of the Code without any action to have the court revive the decree, and (2) imposing building conditions and restrictions both upon the portion of the land sold and that unsold without having first applied for and obtained the court's authorization.

1. In the instant case an entire tract of land of 191.508 acres was directed to be sold by a decree passed on January 24, 1905. The sale was authorized by virtue of the Act of 1862, ch. 156 as modified and found in sec. 243 of art. 16 of the Code. The theory upon which relief was granted was that at the time of the decree it appeared to be advantageous to the parties concerned that the land be sold and converted so that the proceeds would enure in like manner as by the original grant to the use of the same parties who would be entitled to the land sold. It is a perversion of the statute and an abuse of the decree for the land to remain unsold, as on this record, for fifteen years. There is no rational basis for the adoption of the fiction that testimony which spoke as of the date of the decree would have the same evidential value fifteen years later. So, after such a delay, the trustee should not have proceeded to execute the decree without the fresh authorization of the chancellor upon new testimony showing the then parties in interest, and establishing that it would be to the advantage of all the parties concerned to make the sale at that time. *Ball v. Safe Deposit & Trust Co.,* 92 Md. 503; *Preston v. Safe Deposit & Trust Co.,* 116 Md. 211; *Beggs v. Erb,* 138 Md. 354.

(2) In the report of sale of all but 24.227 acres of the tract the trustee first brought to the attention of the court the conditions and restrictions which affected both the tract sold and the portion reserved. The nature of these conditions and restrictions will appear from the opinion. They were unusual for a trustee under a decree to make sale, and involved the permanent appropriation of all the land for particular uses in contradistinction to the general proprietary rights of an absolute estate in fee simple. The imposition of the conditions and restrictions, although of an extraordinary nature in a sale by a trustee under decree, was within the power of the chancellor, but this power should not have been exercised or ratified, when initiated by the trustee, except upon it being established by proof submitted to the chancellor that the proposed conditions and restrictions were to

the manifest advantage of all the parties concerned and should be adopted as a part of the terms of the sale.

The court had jurisdiction to pass the decree for sale, and its resuscitation, after fifteen years of non-observance, without further proof and previous authorization by the court, was, notwithstanding its gravity, an error of procedure, as was the imposition of the conditions and restrictions, and, therefore, neither error was jurisdictional. Consequently, it is too late for any one now to question for the first time the validity of the restrictions and conditions reported to the court and ratified by it in its confirmation of the trustee's first report of sale.

The mere fact that before sale of it by the trustee the residue of the tract vested in the remaindermen can in no wise relieve that residue from the conditions and restrictions, however irregularly imposed at the time of the original sale, provided the court had jurisdiction of the subject matter.