GEORGE W. C. McCARTER, AS SUBSTITUTED TRUSTEE UNDER THE WILL AND CODICILS OF AUSTEN H. McGREGOR, DECEASED, COMPLAINANT–RESPONDENT, v. DONALD McGREGOR, DEFENDANT–APPELLANT, AND JOHN McGREGOR, DEFENDANT–RESPONDENT.

Argued February 21, 1949—Decided March 14, 1949.

*Mr. Charles S. Smith* argued the cause for complainant-respondent; George W. C. McCarter, trustee, and for defendant-appellant, Donald McGregor (*Messrs. McCarter, English and Studer,* attorneys for the trustee, and *Mr. Charles S. Smith,* attorney for the defendant-appellant).

*Mr. James A. Major* argued the cause for defendant-respondent, John McGregor (*Messrs. Major & Carlsen,* attorneys).

The opinion of the court was delivered by

CASE, J.    The cause has to do with the implied power of a substituted trustee under a testamentary trust to sell and convey real estate which had come into the trust after the testator's death in part payment of an adjudicated surcharge against the executors.  The appeal is from a part of the Chancery decree.

Austen H. McGregor left a last will and testament with codicils wherein he set up a spendthrift trust for his son Donald, the appellant herein, the income to be paid to Donald during

life with remainder to Donald's children—in effect to the respondent, John McGregor, Donald's only child. Upon the filing of the account of the executors, among whom were the testator's widow and his son Donald, in the Monmouth County Orphans' Court exceptions were filed by the guardian *ad litem* for John McGregor, then a minor, with the result that the executors were surcharged in the amount of $18,892.44. That surcharge arose from the fact that the executors had placed in the trust as an asset thereof an indebtedness in the amount of $14,370.50 owing by the insolvent Donald McGregor to his decedent father. It was held that the indebtedness was an uncollectible asset and that the executors should be surcharged therewith. *In re McGregor,* 130 *N. J. Eq.* 5 *(E. & A.* 1941*).* Interest and incidental charges made up the total of $18,892.44. The testator's widow, Emily R. McGregor, owned the residence property at 203 Seventh Avenue, Belmar, and she and Donald resided therein. These two, as executors, asked that the property be taken over by the trust in partial satisfaction of the surcharge standing against them. Mr. McCarter, on April 14, 1943, in the capacity of one who was looking after John's interests, wrote to the latter explaining the situation, informing him that there was then a remaining deficiency of $8,472.44 in the surcharge item, stated that while he did not have exact knowledge he believed the real estate was worth at least the amount of the deficiency, and that if it was not worth that amount it certainly was close enough to it so that out of Mrs. Emily R. McGregor's remaining securities of $2800.00 enough could be had to make up the balance, and that if John was satisfied to have the property taken and would so inform Mr. McCarter the latter would, as John's attorney, attend to the matter. John, who was then in the army, replied that he was not anxious to have the real estate placed in the trust but, to aid in the adjustment, was willing that it should be taken at a value not to exceed $4,000.00. The trustee accepted the property and gave credit therefor in the amount of $4,000.00 on the surcharge.

On February 23, 1945, the former trustee having been discharged, Mr. McCarter qualified as substituted trustee. Less than two weeks thereafter, namely, on March 7, 1945, Donald

McGregor addressed the following communication to Mr. McCarter:

"Dear George—

As you know my mother is old and not well, but it is her very definite wish to spend the remainder of her life in her home—203–7th Ave. Belmar, N. J. I want her to have her wish—and after her death —within one year or sooner—I want to buy the premises for my own use. The price of $4,000.00 was agreed upon several years ago—and my son 'Jock' has said he would prefer $4,000.00 to the house. I have paid the taxes and made all the repairs for the last ten or twelve years—and want you to know my desire and intention.

Sincerely,<br>Donald

To
George W. C. McCarter"

Mr. McCarter immediately wrote at the bottom of the letter:

"3–8–45<br>Accepted:<br>G. W. C. McCarter,<br>Substituted Trustee."

That letter and its addendum constituted whatever contract there was for the sale of the property from the trustee to Donald McGregor. Mrs. Emily R. McGregor was at that time approximately 90 years of age and in very poor health. She died November 19, 1946.

On April 2, 1947, Mr. Donald McGregor wrote to Mr. McCarter the following letter:

"Dear George—

During my Mother's life time—she agreed to sell me the, Belmar house for $4000.00—and for the past twelve years I have made all repairs and paid the taxes.—My Son 'Jock' prefers $4000.00 to the house—and I now wish to complete the transaction—by paying $4000.-00 cash in to the trust account—and taking a deed to the Belmar property from you as trustee—

While there is no hurry about the transfer—I will be prepared to take title during this month—and can make the date to suit your convenience—Please advise me when ready—

Yours<br>Donald—

To
Mr. George W. C. McCarter,
Trustee"

Notwithstanding Donald thus held himself out as ready to take title at any time during the month of April, 1947, and thereafter, no effort to close with him appears to have been made.

On October 22, 1947, Mr. McCarter filed the present bill wherein he alleged that he had no doubt about his right to sell and convey and to make good title to the property but had been informed that there was some doubt whether valid title could be passed without the order or decree of the Court of Chancery, and prayed

"That a declaratory judgment or decree be made to the effect that the complainant has full power to sell and convey the title and beneficial interest in the property in Belmar hereinabove described, pursuant to the contract hereinabove quoted, entered into between the complainant and Donald McGregor; that the said Donald McGregor be ordered and decreed specifically to perform the said contract; and that an order or decree be made by this Honorable Court directing the complainant specifically to perform the said contract upon payment of the said $4,000 in cash to him."

It is not necessary to consider just what phase of Chancery jurisdiction this prayer was intended to invoke. The question is not raised. Donald McGregor, the life beneficiary of the trust, and his son, John, the sole remainderman, were brought in as parties defendant. If Donald filed an answer, it is not before us. However, he was in accord with the prayers of the bill. John answered and counterclaimed. His allegations, as supported and enlarged by the subsequent proofs, showed that Donald had, on July 25, 1947, entered into a contract, prepared in the office of Mr. McCarter's law firm, with one Joseph Giresi for the sale of the house and three-fourths of the land together with some undescribed and unvalued furniture for the price of $16,200.00, to which contract Mr. McCarter had appended a clause over his signature as substituted trustee stating that as such trustee he owned the property described in the Giresi contract, that he was under contract to convey the same to Donald McGregor and that he would, at the written request of Donald, convey the same to Giresi upon the payment to the trustee of the consideration named in the trustee's contract with Donald; and that $2600.00 was paid by Giresi on account of the purchase price to Messrs. McCarter, English and Studer, attorneys, to be

held in escrow until the delivery of deed. The counterclaim charged that the so-called contract between the trustee and Donald was not a *bona fide* contract but was merely an attempt to convey the title under the guise of a sale, that the property still belonged to the trust and that the Giresi contract should inure to the advantage of the estate and not of Donald Mc-Gregor.

The Vice Chancellor who heard the matter announced his decision briefly and informally by a letter to counsel wherein he held that the trustee had an implied power to sell the real estate; that the profit on the sale to Giresi should inure to the benefit of the trust estate; and that the conveyance to Giresi, if made, should be direct from the trustee. The decree followed the findings and added that inasmuch as the contract with Giresi included certain personal property owned by Donald the proportionate part of the sale price reasonably assignable to those chattels should be reserved to Donald with permission to the parties or any of them to apply for further instructions with respect to such division. The holding that the trustee has an implied power to sell the real estate is not under appeal.

The complainant's bill does not mention the Giresi contract. It seeks a direction to convey to Donald, although the trustee had undertaken by the subscribed paragraph at the close of that contract to convey directly to Giresi. The latter is not a party to the suit and his rights and duties are, therefore, not in litigation. The significance of his contract is in its incidental bearing upon the relations between the parties before us, upon the propriety of the trustee's undertaking with Donald and upon the request from the trustee that he be directed to convey to Donald.

It is the duty of a trustee in selling land to offer the property in such manner as to produce its fair market value and, generally, to exercise the same judgment and prudence that a careful owner would exercise in the sale of his own property. *Gittings v. Norris,* 144 *Atl.* 836 *(Md.* 1929*); Exchange Trust Co. v. Doudera,* 170 *N. E.* 73 *(Mass.* 1930*). Cf. Kane v. Girard Trust Co.,* 40 *Atl. 2d* 466 *(Pa.* 1945*); Scott on Trusts, Vol.* 2, *sec.* 190.6; *Restatement of the Law of Trusts, sec.* 205 *(d).*

■■ Here the trustee, on April 14, 1943, expressed in writing over his signature the belief that the property was worth at least $8,472.44 and the certainty that it was worth within $2800.00 of that amount. On July 25, 1947, Donald McGregor contracted to sell a portion of the property to a third party together with some furniture of undisclosed extent and value for $16,200.00. Midway between those two dates, Mr. McCarter, less than two weeks after he had qualified as substituted trustee, without, as he says, knowing the market value of the property, without obtaining the advice of anyone who knew the value, without seeking a purchaser or even making known that the property was for sale and without communicating with the remainderman, entered into the arrangement with Donald, a close life-long friend, which is put forward as a contract, to sell to him for $4,000.00, with no payment of any sort to be made before closing title which, at Donald's option, was not to occur until one year after the death of his mother, then aged and ailing but nevertheless living and without certainty of early death. In view of the fact that this whole problem arose out of Donald's financial irresponsibility, and that he was, apparently, dependent upon the proceeds of a resale to finance the purchase from the trust, the prudence of the trustee in endorsing an acceptance upon Donald's statement of intention is thrown into grave question; this, aside from the price. It is also to be noted that Donald's letter of April 2, 1947, makes no reference to either his earlier writing of March 7, 1945, or the trustee's action thereon but purports to ground in an alleged agreement made by his mother during her lifetime and upon the asserted desire of John, for which there is no support in the proofs, as of the time of the writing, to have the trust possessed of $4,000.00 rather than the house. The framework of the letter merits greater notice because the author was a practicing attorney, who, it is to be assumed, knew the legal aspect of his writing. The legal standing of the transaction between the trustee and Donald is rather nebulous, but we are assuming that it was mutually intended to be contractual.

There were understandable human factors: the trustee was ·advised, and himself knew, that real estate was not a wise hold-

ing for a trust, and he wanted to relieve himself from the responsibility of retaining it; the aged Mrs. McGregor, mother of the *cestui* and grandmother of the remainderman, wished to spend her last days in the home where she had long lived and which she had formerly owned; and the trustee believed, although he did not undertake to ascertain the fact, that John would be willing to gratify his grandmother's wish. But we find no justification therein for a sale by the trustee under the circumstances above detailed at a price which, upon the basis of Mr. McCarter's opinion expressed to John as to value, and of the actual sale figure named in the Giresi contract, was astonishingly small. We think that those figures, together with common knowledge of housing conditions and inflated costs, created a *prima facie* case which called for some proof, of which there was none, from the trustee in support of $4,000.00 as the fair market value of that which he had undertaken to sell. Much is made of the fact that the remainderman, then recently become of age and absent from home in army service, had, in May of 1943, agreed to have the trust take over the property at a value of $4,000.00. It is argued that in so doing he established the fair value at $4,000.00 which he is estopped from denying. We think that little weight is to be given to that circumstance. The trustee was under the duty to exercise prudence in ascertaining, and diligence in getting, the fair market value, and he did not meet that duty. The courts were open to him before he stipulated with Donald, even as they are now, for instruction with respect to his authority. The appellant was chargeable with constructive notice that the powers of a trustee are limited to the incidents of his authority.

The decree appealed from is affirmed.

*For affirmance:* Chief Justice VANDERBILT and Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—6.

*For reversal:* None.