## LOWIS MAYERS *v.* ELIZABETH KRAWSHAAR.
### [No. 68, October Term, 1933.]

170

*Decided January 18th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Charles F. Obrecht* and *Edwin T. Dickerson,* with whom was *Max Sokol* on the brief, for the appellant.

*Henry Vogt* and *Cary D. Hall, Jr.,* with whom was *John V. Klier* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

Lowis Mayers, defendant (appellant), had a judgment entered July 11th, 1929, on a judgment note dated July 9th, 1929, against the plaintiff (appellee), her husband, Paul Krawshaar, William E. Hayen and Louise N. Hayen, his wife, and Joseph F. Croft and Elizabeth Croft, his wife, for $5,800 as collateral security or guaranty of a mortgage to him from the Community Manufacturing Company for a like amount of $5,800, dated July 9th, 1929, on certain real and personal property located in Baltimore County. Concurrently with the execution of the mortgage and the signing of the judgment note, an agreement was entered into between all of the parties to the judgment, three of the provisions of which, necessary to an understanding of this case, are as follows:

> "And we hereby jointly and severally, agree to indemnify and save harmless said Lowis Mayers, Baltimore, Maryland, his heirs, personal representatives and assigns, against any loss, damage or liability, not exceeding the aforesaid sum of fifty-eight hundred dollars ($5800.00) which it may suffer or incur through the making of any loan or advance to said borrower, or through permitting said borrower to create other liabilities to said association.

> "This guaranty shall be a continuing one and shall bind the undersigned and their respective heirs, executors and administrators up to an aggregate amount of Fifty-Eight Hundred Dollars ($5800.00) for all loans and advances made by said Lowis Mayers, Baltimore, Maryland, to or for said borrower, or on account of the latter's liabilities to it, until notice in writing has been received by said mortgagees and accepted by it from the undersigned of a desire to terminate this guaranty, the undersigned remaining liable for all obligations of the borrower not exceeding the aforesaid sum contracted before the receipt of such notice.

"It is further agreed that in the case of default of said mortgage that the mortgagee therein shall first proceed against the factory property to obtain whatever money can be obtained therefrom before proceeding against the individual signers."

The mortgagor defaulted in the payment of principal and interest on the mortgage debt, and on the 26th day of August, 1930, after three weeks' advertisement, the real estate described in the mortgage was sold to William E. Hayen, Joseph F. Croft, and Paul Krawshaar for the sum of $3,300, and the personal property, consisting of machines (principally sewing) and equipment, to Jacob Dashew, for $675, and the sales ratified September 30th, 1930. Mrs. Krawshaar, on April 14th, 1931, paid $900 on account of the judgment debt, and on July 24th, 1931, $100, and later (date not appearing) $111, making a total sum of $1,111 paid by her. Joseph F. Croft on February 2nd, 1931, paid $1,000. All of the payments were made about eighteen months after the sale, leaving a balance, with various charges and credits, of $596.11 (estimated) due and unpaid on the mortgage debt and interest.

The plaintiff, Elizabeth Krawshaar, filed a bill in which she prays a discovery and the writ of injunction to restrain the defendant from proceeding against her on the confessed judgment as against her, and that her liability on it be decreed to be terminated. The injunction was decreed as prayed; hence this appeal.

In her bill the plaintiff, besides asking a discovery, assigns as reasons why she should be relieved of any further liability on the confessed judgment:

1. That the defendant granted an extension of time to the mortgagor without the consent of the guarantors and accepted a bonus or consideration for the same from it. There is no proof of either, the fact being that he proceeded with the foreclosure of the mortgage thirteen days after it became due.

2. That the real estate mortgaged was sold to Joseph

Croft, William E. Hayen, and Paul Krawshaar for $3,300, and because the mortgagee's attorney and the mortgagee himself have neglected and abandoned the foreclosure proceedings and have failed to collect the purchase money, and have failed to exercise due diligence in the application of the proceeds of sale to the mortgage debt which the plaintiff has guaranteed, whereby, on account of a changed and vanished real estate market, the plaintiff "through lapse of time" has been prejudiced. Her husband was one of the purchasers at the mortgagee's sale, and the plaintiff was and is one of the guarantors of the mortgage so foreclosed, along with her husband, his associates in the Community Manufacturing Company and their wives; but as such guarantors they are in much the same position as the mortgagor or principal debtor with respect to their right to demand prompt action in the collection of the principal debt by the creditor. As said by Lord Eldon in *Eyre v. Everett*, 2 Russ. 381, quoted by Judge Alvey in *Freaner v. Yingling*, 37 Md. 491, 499: "The surety has no right to say that he is discharged from the debt which he has engaged to pay, together with the principal, if all that he rests upon is the passive conduct of the creditor in not suing. He must himself use diligence, and take such effectual means as will enable him to call on the creditor either to sue or to give him, the surety, the means of suing." And by the same chancellor, in *Wright v. Simpson*, 6 Ves. 734, "The surety is guarantor and it is his business to see whether the principal pays and not that of the creditor."

That is not exactly the situation in this case. The complaint of the plaintiff is that the delay in closing the sale of the real estate is wholly the fault of the defendant, and that she should not be penalized either on account of the cost due to the lapse of time or, in the event of a resale, of a disappearing real estate market. According to the record, the defendant agreed to accept a mortgage for the purchase money from the purchasers provided the defendants in the guaranty judgment would pay the deficiency after the credit of the purchase money, less the accrued interest, costs, and

expenses of foreclosure. A deed to the purchasers was prepared and a mortgage in which the wives of the purchasers were named as mortgagors. The transaction as outlined fell through, the defendant alleges, because Hayen's wife was not living with him and her signature could not be had, the plaintiff saying it was because she declined to do any more signing. After the sale, as stated in the answer, the defendant, through his attorney, "after bringing pressure to bear against the defendants (in the confessed judgment)," "finally persuaded the complainant and her husband, Paul Krawshaar, to agree to pay the sum of one thousand dollars ($1,000) and Joseph F. Croft and Elizabeth Croft to pay one thousand dollars ($1,000) on account of the indebtedness to said Lowis Mayers." The plaintiff's testimony is that she agreed to pay $1,000 if Croft did likewise. The sale had been ratified, but the property had not been conveyed to the purchasers because of the failure of their wives to yield to the demands of the mortgagees' attorney that they join, though a purchase-money mortgage without the wives' joinder would have freed the property of their right of dower as against the mortgagee. However, the defendant mortgagee then agreed to take the property himself at $3,300, but no proceedings were ever had to substitute him as the purchaser. In demanding payment from the judgment defendants or any of them, after the sale, it could only have been on the theory that the sale price of the mortgaged real estate had been definitely ascertained at $3,300, as the mortgagee, plaintiff in the confessed judgment, had no right to proceed against such defendants until the balance due and unpaid on the mortgage debt had been determined by a foreclosure, and this could only be done upon the sale, ratification, payment of the purchase money, and an auditor's report. The defendant, in his brief, to relieve himself of responsibility for the delay, cites several cases to the effect that a trustee appointed to foreclose a mortgage is an officer of the court and the court is the vendor, acting through the trustee as its agent. *Royal Ins. Co. v. Drury,* 150 Md. 211, 222, 132 A. 635; *Columbia Paper Bag Co. v. Carr,* 116 Md. 541, 543, 82 A. 442; *Williams v. Fidelity & Deposit*

*Co.,* 121 Md. 222, 225, 88 A. 119; *Gittings v. Morris,* 156 Md. 565, 575, 144 A. 836, 927. Those authorities do not strictly apply to this case. This sale was made by the attorney named in the mortgage as the agent of the mortgagee (not appointed by decree), under the provisions of article 66 of the Code, when "the jurisdiction of the court became complete on the report of the sale." *Wilson v. Walls,* 9 Md. 356, 459; *Warehime v. Carroll County Building Assn.,* 44 Md. 512, 517. In discussing the power conferred on mortgagees by article 66 of the Code, this court, in an opinion by Judge Miller in *Chilton v. Brooks,* 69 Md. 584, 587, 16 A. 273, 274, said: "This law grants exceptional privileges to mortgagees. They, or their assignees, can sell at once upon default without the delay of first obtaining a decree for that purpose; and what is more important they can become purchasers at their own sales without having their title impeached upon that ground. Code, art. 64, sec. 13 (now article 66, sec. 14). In this case the appellees availed themselves of this privilege. They were therefore bound to act with strict impartiality in regard to the sale. Being both vendors and purchasers there was greater reason for diligence and effort on their part to obtain the best price, 'and the court is called upon to exercise more care and strictness in passing upon the sale thus made.' "

The plaintiff could not have complained of any delay of the defendant in foreclosing his mortgage (*Freaner v. Yingling, supra*), but after a sale was made and ratified, and no sound reason being given for the failure to complete it by the delivery of a deed and a purchase-money mortgage, with no fault of this plaintiff, or the other defendants in the confessed judgment, that the sale of the mortgaged real estate was not consummated, they are entitled to a credit of $3,300 on the mortgage debt as of the day of ratification of the sale.

3. The plaintiff also alleges as a reason for her release from the obligation as a guarantor of the mortgage debt that the defendant, through his agent and attorney, Harry Fine, had interfered with and prejudiced her right of contribution "against the said William E. Hayen and Elizabeth N. Hayen,

his wife, by depriving her of the benefit of the lien of the said confessed judgment through various waivers and releases of the said judgment and the lien thereof from certain properties of said William Hayen and wife, the value of which properties were much in excess of the said judgment, without any consideration therefor, or reduction of the said mortgage debt and without the knowledge and consent of the complainant * * *" have assisted and enabled the said William E. Hayen and wife to completely divest themselves of all their real assets so that "they are now destitute and insolvent, thereby defeating the complainants' rights to obtain contribution from them under said judgment and guaranty agreement."

The evidence is that on November 15th, 1929, a deed was made to Hayen of a lot of 50 feet by 100 feet on the Coleraine Road in Baltimore County (consideration not given), on which he erected a house, and on December 5th, 1929, sold the house and lot for $3,650. The deed to him, amongst other conditions and restrictions, provided that no house should be erected at a cost of less than $3,500, so that he must have had invested in the lot not over $150 if he complied with the conditions of his deed. He did not have title to the lot when he gave the confessed judgment on July 11th, 1929, more than two months before the Coleraine Road lot was conveyed to him. In order to dispose of the property and enable the purchaser to finance his purchase through a mortgage to a building association, it was necessary to obtain a waiver of the lien of the judgment. The building of houses and the sale of them was the business in which he was engaged, a fact that must have been known to the plaintiff, whose husband, Paul Krawshaar, had been associated with him in the Community Manufacturing Company for more than a year before the mortgage here in evidence was executed, which was an extension of a mortgage for $6,000, collaterally secured by a confessed judgment for the same amount, with the same defendants as in the judgment in this case, and five others who dropped out when the mortgage in evidence was executed, the original judgment released, and

a new one given by Croft, Krawshaar, Hayen, and their respective wives.

The other waiver was as to the two lots on New York Avenue, which Hayen did not own, but upon which he had built a house. The judgment was not a lien on the land, but the attorney who was negotiating a loan on the property, out of abundant caution, demanded a waiver of the judgment. Hayen was paid $3,850 for the house, out of which he paid the bills for labor and materials. The judgment not having been a lien on this property, it was not subject to a writ of *fi. fa.*, and the plaintiff has no just ground of complaint of the waiver as to the lots which Hayen never did own. The record does not show the net amount received by Hayen out of either transaction, though it is only fair to assume that it was a contractor's profit.

There is no evidence in the record that Hayen is insolvent, or that his financial condition has changed for the worse since he joined in the confessed judgment or guaranty, except for the loss of the mortgaged property by foreclosure. But the question here is whether the defendant by his conduct has prejudiced the right of the plaintiff to enforce her right to contribution from her codefendants in the confessed judgment and, particularly, from William A. Hayen.

The defendant's contention is that the judgment has not been released or waived as against William A. Hayen personally, and that, even if this were the fact, such release would have no effect if there was a manifest intention to release Hayen only. *Shriver v. Carlin & Fulton Co.,* 155 Md. 51, 64, 65, 141 A. 434; *Smith v. State, use of County Commissioners,* 46 Md. 617, 619. But that is not the question involved here; it is whether the defendant mortgagee had in hand property or security available for payment of the share of William A. Hayen, which was lost to her and the other sureties by the act, not delay, indifference, or indulgence, of the defendant Mayers, or Hayen at the time was shown to be insolvent.

A case in which the facts strongly resemble the facts of this case, the only one we have been able to find, and in

which the opinion of the court is as pertinent here as where it was applied, is *Council Bluffs Savings Bank v. Griswold,* 50 Neb. 753, 70 N. W. 376. A judgment had been entered in Nebraska on a decree from a district court in Iowa. The decree had been for the sale of mortgaged property, and against several individuals against whom recourse could be had "for any balance thereon remaining unsatisfied by the proceeds of such sale." After the entry of the decree, the plaintiff had waived its lien against three lots in Council Bluffs belonging to one of the defendants. Several of the defendants resisted the collection of the judgment in Nebraska on the ground that the waiver of the lien of the judgment had released them, of which the court said: "There is, it should be observed, no pretense that the property thus released was included in the mortgage, or that the plaintiff had any specific lien thereon as security for the indebtedness which is the foundation of the judgment. It does not appear that the plaintiff received any consideration whatever for the releases alleged, nor is it shown by pleadings or proof that the property described was at the time of its release owned by the noncomplaining defendants, who are by counsel referred to as 'the Council Bluffs parties,' or that said defendants, or any of them, are insolvent or unable to contribute their just proportion of the judgment indebtedness. The question is not, therefore, that of an alleged payment, relied upon as a defense in full or *pro tanto,* or the power of courts of equity to control the enforcement of judgments in order to administer equity between the several parties liable therefor, but whether one defendant may, as a matter of right, unaffected by equitable considerations, insist upon the preservation of the judgment lien upon particular property of his co-defendants. The contention of defendants must fail, for the obvious reason that the law will not require resort to particular property." See *Shriver v. Carlin & Fulton Co.,* 155 Md. 51, 64, 65, 141 A. 434, 58 A. L. R. 767.

This is not a situation to which can be applied the principle of a case wherein a creditor had in possession at the

inception of the obligation security with which he has parted and thus deprived a codefendant of the power to indemnify himself. There are many cases in which the surety has been discharged by the surrender by the creditor of the property of the principal, but that question of fact is not involved in the contention here. Judge Alvey, in his opinion in the trial of *Freaner v. Yingling,* adopted as the opinion of this court, said in 37 Md. 491, 498, wherein the surety was held liable: "* * * where the debtor places funds or securities in the hands and possession of his creditor to secure a debt for which a surety is bound, and which funds or securities, by some positive act or gross negligence of the creditor, are lost or destroyed to the prejudice of the surety. If, in such case, the creditor surrenders or abandons the fund or security, or, in case of the security consisting of perishable property, he allows it to be taken out of his possession and destroyed, or for the want of ordinary care and attention he suffers it to perish and become worthless in his hands, then, it is clear upon the plainest principles of justice, whatever loss is sustained should fall upon the creditor rather than the surety." Or, as said in *Baker v. Briggs,* 8 Pick. (Mass.) 122, 130: "Mere delay or negligence to call upon or compel the principal to pay, would not give the surety a defence, but acts done which would tend to prejudice him, or deprive him of the power of obtaining indemnity would, as appears by the case of *Hunt v. Bridgham,* 2 Pick. (Mass) 583." In this case, however, the property which the plaintiff contends should not have been released, or the judgment against which should not have been waived, was not, according to the record, owned by Hayen when the confessed judgment was given, and he did not acquire title to it until three months afterwards, so that the plaintiff was not, by the waiver, deprived of any security which she and the creditors had when the confessed judgment was signed by her and Hayen. The creditor, under the terms of the guaranty contract, could not have issued execution until he had foreclosed his mortgage, and then he was not obliged to do it promptly on its default. *Freaner v. Yingling,* 37 Md. 491, and cases there cited.

There are some other facts in the record which give support to the statement in the answer, "that the waivers or releases thus waived the judgment as to properties in which both legal and equitable title was vested in third persons, foreign to this cause and in no wise connected with the said judgment; that these waivers were a mere gesture, having no real legal effect and in fact therefore in no way detracted from or prejudiced the complainant's rights of contribution nor affected them in any way." Mr. Fine, who about the same time was associated with Hayen in many real estate transactions, testified that he "gave the waiver to Mr. Hayen on his statement to me that the title to that particular property was never in his name, that the empty lot was owned by a third party and he put the improvements on it and it was the desire of Mr. Levy's office that a waiver go against the improvements." When the negotiations concerning the waiver of the lien of the judgment were going on, there was no record title to any of the lots in the name of William A. Hayen. The deed to him for the lot on Coleraine Road was dated November 15th, 1929, but was not recorded until December 4th, 1929. The house on the lot was being financed by a building association, the waiver for which was entered the following day. It is apparent, therefore, that the major part, if not all, of the time of construction transpired during the ownership of the lot by the Mann Realty Company, Hayen's grantor, and gives some support, at least, to the statement in the defendant's answer, that Hayen did not have title to any of the lots improved by Hayen, and was ground for the contention of Mr. Fine, in response to Mr. Levy's demand for waivers, that none were necessary because Hayen did not own the land. Just what financial interest Hayen had in the Coleraine Road lot does not appear, the plaintiff assuming that because he received the gross amount of $3,650 out of the transaction, this amount was available for the payment on a judgment which, according to the agreement to which all were parties, could not be enforced until the foreclosure of a mortgage which had more than nine months yet to run. The variation from the rule stated by Judge Alvey in *Freaner*

*v. Yingling, supra,* is that, as stated there, it is predicated on the possession by the creditor of security at the date of the contract, and is silent as to security which may come into his control after its execution. The taking of title by Hayen to the Coleraine Road lot subsequent to the execution of the guaranty agreement seems to have been an incident to the building, financing and sale of a house, none of the details of which appear in the record, so that we have no way of knowing just exactly what interest Hayen had in the transaction, except the general statement of Hayen that out of the proceeds he paid the bills for labor and materials. If the plaintiff suffered any pecuniary loss in the waiver of the judgment, it was within her power to show it; no reluctance being shown by either Hayen, her witness, or Fine, to furnish all the information in their possession. There is, however, enough in the evidence from which to draw the inference that the only interest of Hayen in the proceeds was a contractor's profit.

But aside from all this, the evidence is that nothing was done by the defendant or by Hayen to impair the security which the defendants in the judgment, who were also the sureties in the guaranty contract, had the day the judgment was given, nor that any change for the worse has occurred since that time except perhaps the changing times, so far as the security afforded the judgment creditors as against each other is concerned.

4. The plaintiff devotes a considerable portion of her bill to an involved attack on Joseph F. Croft, another of the judgment debtors, but the uncontradicted evidence is that he has not only paid a thousand dollars on his guaranty, but that the judgment has become a first lien on his property, whereas when the judgment was entered it was subject to a mortgage for $700, which was paid out of a mortgage for $1,700, subject to the judgment, the remaining thousand dollars being applied to the deficiency on the mortgage. Her position, therefore, with relation to Croft has been improved and not impaired.

Our opinion, therefore, is that the defendant should be required to account for the sale of the real estate at $3,300 and $675 for the personal property, less interest, taxes, insurance, and costs, to the date of ratification of the sale, and if there be any deficiency after the application of the contributions of the judgment creditors to the balance, the defendant here shall have recourse against the judgment debtors for such deficiency. If any of the judgment debtors pay more than their respective shares on the judgment debt, they have recourse against the others for such excess. When the defendant has definitely ascertained by an auditor's report the liability of the judgment debtors, he can proceed, and not before. The order restraining the execution of the judgment, and decreeing the plaintiff's liability on the judgment terminated, was premature, as it appears from any view of the evidence that there will be a balance owing the defendant on his judgment, which can only be definitely ascertained in the manner hereinbefore indicated.

*Decree reversed, costs to be paid by the appellee.*