## G. HOWARD ROE ET UX. *v.* THE CITIZENS NATIONAL BANK

[No. 1063 September Term, 1975.]

*Decided June 9, 1976.*

The cause was argued before LOWE, MELVIN and MASON, JJ.

*Herbert J. Hirsch* for appellants.

*Paul S. Beatty,* with whom were *Isaac Hecht, Benjamin S. Cohen* and *Hecht & Beatty* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

The issue at the root of this controversy appears

deceptively simple. It is, in essence, whether fewer than all of the joint obligors of a loan guarantee may be released, leaving the unreleased obligors responsible for the unpaid portion of the loan.

The record shows that the Levys [1] and the Roes [2] jointly and severally executed a guarantee to The Citizens National Bank, covering up to $200,000.00 of a $326,820.07 loan made to Apollo Therma Products, Inc. by that bank. The corporation defaulted. The bank filed a declaration suing the Roes upon their guarantee obligation, and simultaneously moved for summary judgment, filing an affidavit in support of that motion, the original note, and the guarantee agreement along with its declaration.

The Roes filed a general issue plea denying indebtedness and a special plea asserting that a valid general release had been executed by the bank. A hearing on plaintiff's motion for summary judgment was held on September 18, 1975. A document was introduced at that hearing entitled "General Release." This document clearly sought to release J. Leo Levy, Jr. and Rachel S. Levy, from the guarantee agreement and provided in its final paragraph:

> "It is understood and acknowledged that the granting of this General Release to J. Leo Levy, Jr. and Rachel S. Levy shall not release George Howard Roe and/or Gladys Terry Roe from any obligations which they have to the bank pursuant to the aforesaid Guaranty dated September 15, 1971."

Notwithstanding this language in the release, appellants contend "that the release of the co-guarantors (Levys) under seal released all of the guarantors or obligors." To support their contention, appellants recite encyclopedic and case law quotations, hoping to convince this Court that a release under seal of fewer than all co-guarantors releases them all, regardless of express language in the instrument of release

---

1. Mr. and Mrs. J. Leo Levy, Jr. (wife, Rachel S.)
2. Mr. and Mrs. G. Howard Roe (wife, G. Terry)

to the contrary. A thorough reading of the authorities, from which appellants selectively quote, does not sustain that premise.

Although appellants begin by quoting 19 M.L.E., *Release*, § 5 as follows:

> "The unconditional release of one or more joint debtors or [joint] obligors releases them all, at least where the release is a technical one under seal.",

they omit the statement immediately preceding which qualifies it:

> "Generally speaking, the question as to what persons are released by a release depends on the intention of the parties as gathered from a proper construction of the instrument.",

and the statement immediately following which circumscribes it:

> "On the other hand, a court of equity will not give a release an operation beyond the intention of the parties and the justice of the case, and at law the intention of the releasor not to release obligors other than the releasee manifested by an express reservation in an unsealed instrument has been given effect by construing the instrument as a covenant not to sue."

Appellants' brief directs our attention to a quotation from *Booth v. Campbell, trustee of Harper,* 15 Md. 569, 574, presumably to convince us that the rule is without exception:

> "A release or discharge of one of the defendants would operate as a discharge of all. This principle is so well settled as to require no authorities to be cited in its support. If the matters alleged in the plea are sufficient in law to operate a discharge of R. B. Fitzgerald from all liability upon the judgment, the inevitable consequence is, that it

cannot be enforced against the appellant; for the just and sufficient reason, that he ought not to be compelled to pay the money, without being entitled to claim contribution from the other defendants, which he cannot do if they have been discharged from the judgment by the act of the plaintiff."

That case, however, was distinguished and explained in *Valley Savings Bank v. Mercer*, 97 Md. 458, 477.

"Another Maryland case cited by the defendants is *Booth* v. *Campbell*, 15 Md. 569, in which it was said that a release or discharge of one of several defendants in a judgment, jointly liable thereon, operates as a discharge of all. Undoubtedly an effective and valid release must have that effect, but the question again arises what kind of a release or contract did the Court in that case hold would operate as a discharge. There was a parol agreement on the part of the judgment creditor and one of the judgment debtors that if the latter would pay twenty per cent on the amount of the judgment, [and collateral consideration] the judgment creditor would 'release the judgment.' The sum agreed upon was paid and a receipt of the creditor therefor was filed in the cause with an entry *on the record* of its being *in full of said judgment.* This, together with the additional collateral consideration, was held to be a good accord and satisfaction. In other words, the judgment having been satisfied *all* liability therein was discharged. The very record which showed the existence of the judgment evidenced its satisfaction, and *being satisfied* the judgment of course cannot be made the basis of a suit against anybody."

In the case before us, the consideration for the release [3]

---

3. We are told in the appellee's brief that the Levys paid $35,000.00 to obtain their release. The record does not disclose the amount of consideration paid other than the nominal consideration recited in the release.

did not amount to full satisfaction of the debt. Thus, the reasoning upon which the result reached in *Booth* is based is not applicable here. We note that, in *Booth*, the release filed in the court clerk's office acknowledged there had been payment in full and "amounted in law to a satisfaction of the judgment . . . ." 15 Md. at 575. The release at bar clearly indicates that less than full payment was made by the Levys and the creditor's right against the Roes is expressly reserved.

Although, under the common law, the release of one joint debtor was a release of all, modern courts have generally honored an intention to the contrary clearly expressed in the release instrument. In order to reach that common sense result, courts have treated a qualified release of fewer than all joint obligors as a covenant by the creditor not to sue rather than as a release. The effect of a covenant not to sue some but not all joint-obligors is explained at § 338 of *Williston on Contracts*:

> "A covenant not to sue a debtor or to forbear perpetually has from early times been held a bar to the original cause of action. This is to avoid circuity of action; for, if the plaintiff in the original action should recover, the defendant could recover precisely the same damages back for breach of the covenant to forbear or not to sue. Instead of permitting the double action, the court produces the same effect more simply by giving judgment for the defendant in the original action. But in case of a covenant not to sue one of two or more joint debtors the intention of the parties can be attained only by enforcing in terms both the original promise and the later covenant. For if in an action for the debt the covenantee had judgment, it would also discharge his co-debtors — a result not contemplated by the parties. But if the covenant is enforced in terms, the obligee retains his right of action at law against all the joint debtors, becoming liable in turn to the one to whom the covenant to forbear or not to sue was given for any damage

which the latter may suffer by the breach of covenant. If any judgment obtained against the joint debtors is not satisfied out of the property of the covenantee, such damages can only be nominal. Accordingly, such a covenant given to one joint obligor does not have the effect of a release: The debt is not discharged; and the other joint obligors remain bound.

The same effect is given to a release by the creditor which contains an express reservation of his rights against the other joint debtors. In fact such an instrument is in terms contradictory. If it is to be regarded as a true release of one joint debtor, it would be legally impossible to reserve rights against the others, for their obligations could not continue to exist without all being bound. In order to give effect to the manifest intention of the parties as nearly as possible, the courts have therefore held that a release with such a reservation is in legal effect no release at all, but merely a covenant not to sue. So in the case of joint and several liabilities, if the creditor while discharging the several liability expressly reserves the joint right, it is not discharged. Likewise, the joint liability may be released with a reservation of the several right. A right against other debtors is held to be reserved in any case where it appears from the terms of the release that it was not intended or expected that all the debtors should be released."

In Maryland, that procedure was adopted in *Shriver v. Carlin & Fulton Co.*, 155 Md. 51, 60-65.

". . . Freeman in his work on *Judgments*, sec. 1141, states that the prevailing rule is that a release of one joint judgment debtor does not release his codefendants, if the release 'shows that it was not intended to discharge other debtors except to the extent of the payment made, if any, by the one

released.' The exception appears to have grown out of an effort to escape the harshness of the common law rule, that a release of one obligor in a bond or one joint tort-feasor operated to discharge all other jointly bound with him. And the device adopted to accomplish that end was the fiction of a covenant not to sue. That is, conceding that a technical release of one joint obligor would release his co-obligors, the courts said, in cases where the deed of release contained a proviso that the obligee reserved the right to proceed to collect the balance due him on the bond from the other obligors, that it was not a technical release but a covenant not to sue, and as such could be given the effect, either at law or in equity, not to release the entire judgment but only to exonerate the debtor to whom the release was given from liability to the releasing creditor, but to leave him subject to all rights of contribution or subrogation which his co-obligors might have against him." *Id.* at 61.

The *Shriver* Court made it clear that a qualified release could not inure to the detriment of the creditor as the recorded satisfaction of the judgment in *Booth* had done: [4]

"The manifest intention of the plaintiff was to release only White, but to retain the judgment against the other defendants, and there is no reason why that intent should not be given effect. It could not possibly have prejudiced White's co-defendants. In enforcing his judgment the plaintiff was not obliged to proceed against them jointly, but he could have collected it from any one or from all of them as he saw fit, but he could do nothing without their consent which would affect their rights *inter sese*, and, if as a result of the order White's co-defendants suffered any loss, or the amount

---

4. Although not specifically mentioning Booth v. Campbell, *supra*, for this point, the Shriver Court did have Booth in mind, citing it for another principle.

which they might be required to pay to satisfy the judgment was increased, to that extent the plaintiff's rights against them would be extinguished. Moreover, if White paid less than his share of the judgment, and his co-defendants paid the balance due, they could, notwithstanding the order of satisfaction as to White, compel him to contribute whatever was necessary to make up the part which he should have paid, and if he paid more than his share, certainly his co-defendants were not injured, because it decreased not only their joint but their several liability." 155 Md. at 64-65.

This language is eminently clear when read in context [5] and weighs in appellee's favor so overwhelmingly as to put appellants to flight. But Parthian-like, even in retreat, they fire a parting dart.

Appellants contend that, even if a qualified release does not generally release all obligors, this particular release would do so because it is under seal. They point out that in *Shriver*, upon which the lower court relied in ruling in favor of appellee, the release was not under seal. Appellants cite *Commercial, Etc., Bank v. McCormick*, 97 Md. 703, presumably for the principle that the seal on the release signifies that the underlying obligation has been fully satisfied.

In that case, suit was filed against 18 obligors of a note although 6 of them had been released upon part payment. Only one (not one of the 6 released) was summoned and the case was heard against him alone. The primary question was the effect of the agreement of partial release upon a joint-debtor not a party to the release. The agreement recited a partial consideration and was not under seal. The *McCormick* Court, citing *Ingersoll v. Martin*, 58 Md. 67 at 74, discussed the principle that a release under seal imports consideration and stated, as dicta, that such a release of an existing debt is sufficient to fully discharge it,

---

5. Appellants' brief includes a deceptively altered quotation from Shriver which conveys a meaning contrary to that expressed by the holding of the Court in that case.

97 Md. at 707. See also *State, use of Barnard v. Gott,* 44 Md. 341, 347. However, the result reached in *Mc-Cormick* was completely contrary to that which appellants would have us believe, and it was reached by use of the legal fiction, later discussed in *Shriver,* of treating the partial release as a covenant not to sue. The Court noted that:

"Throughout the case this agreement seems to have been treated as a *covenant* not to sue. As we have already seen, it is not a technical covenant, as it is not under seal, but treating it as a covenant not to sue, the authorities do not give it the effect contended for by the appellee. It is true that it was said in *Clopper v. Union Bank,* 7 Harris & Johnson, 92, that a covenant perpetual, as that the covenantor will not sue without any limitation as to time, is in law a release and may be pleaded in bar as such, but the authority cited for that is 5 *Bac. Abr. Tit. Release,* (A2) 683, and on the same page it is said 'If two are jointly and severally bound in an obligation and the obligee by deed covenants and agrees not to sue one of them this is no release and he may notwithstanding sue the other.' There are many cases, and the principle would seem to be thoroughly settled, to the effect that a covenant not to sue one of two obligors does not release the other, but to have that effect there must be a technical release under seal. *Bradford v. Prescott,* 85 Me. 482; *Line v. Nelson,* 38 N.J.L. 358; *Berry v. Gillis,* 17 N.H. 9; *Bozsman v. State Bank,* 7 Ark. 328; *Crane v. Alling,* 15 N.J.L. 423; and other cases that may be found in 20 *Am. & Eng. Ency. of Law* (1 ed.), 741 and 751 notes. The reason is that a technical release, being conclusive evidence of payment in full, is regarded as a performance and extinguishment of the bond, and consequently a discharge of all the obligors, while a covenant not to sue one of several obligors is not only no evidence of the payment of the bond, but implies, if it does not

express, the very contrary. When a covenant not to sue is made with a sole obligor, it is permitted to be plead in bar to prevent circuity of action, but a covenant not to sue one of several obligors is not pleadable in bar." 97 Md. at 708-709.

The use of this legal fiction that a partial release is actually a covenant not to sue, in attempting to attain common sense justice, would backfire if we were to allow the presence of a seal on the release to contradict the clear intent of the parties. A *release* of fewer than all of the joint obligors would dare not be sealed by the creditor for fear of having it interpreted as importing full payment and final satisfaction. On the other hand, to effect a release of a joint obligation by partial payment, he would have to have the release sealed if it was to have the effect of a covenant not to sue, so as to protect his right against the remaining obligors. We will not indulge in a furtherance of the legal fiction as to the meaning of a seal when the intention of the parties is clearly expressed to the contrary.

It is clear in this case that the creditor expressly denied any intention of releasing the Roes. The expression of such intention is controlling in determining when a release of a joint obligor does not release all obligors. This result is dictated by our own common sense and the manifest justice of carrying out the expressed intention of the parties to the release.

In the recent case of *Wheaton Lanes v. Rinaldi,* 236 Md. 525, 531, the Court of Appeals employed the direct approach in order to reach the result intended by the parties to the release. Without specifically mentioning the legal fiction of treating a release as a covenant not to sue, it pointed out that the rule concerning releases had been concisely stated in *Shriver, supra,* at 64:

"... 'The equitable rule now prevails, and a release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation.' "

That is a clear expression of the law of Maryland and is controlling in this case.

But for the contention that the Levy release also released appellants, it should be noted that neither the affidavit appellants filed nor their memorandum in opposition to the motion for summary judgment contain any facts which would justify the denial of that motion. This failure factually to contradict the facts recited in appellee's affidavits [6] constitutes an admission of those facts for purposes of the motion. Md. Rule 610.a.3. Since there was no genuine dispute as to any material fact pursuant to Md. Rule 610.d.1, the trial judge properly granted the motion for summary judgment.

*Judgment affirmed.*
*Costs to be paid by appellants.*

---

**6.** In an "Objection to Motion for Summary Judgment" filed on September 24, 1975, five days after judgment was entered, appellants question the balance due. That issue was not raised on appeal and is not before us for consideration.